# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | | |
|---|---|---|
| TQP DEVELOPMENT, LLC | § | |
| | § | |
| v. | § | Case No. 2:12-CV-656-JRG-RSP |
| | § | |
| YELP INC. | § | |

## MEMORANDUM ORDER

Before the Court is Defendant Yelp Inc.'s Motion to Transfer Venue to the Northern District of California Pursuant to 28 U.S.C. § 1404(a) and to Stay Any Other Proceeding Pending Disposition of the Transfer Motion (Dkt. No. 19, filed November 19, 2012). The complaint against Yelp was filed on August 23, 2012. Yelp has filed the instant motion to transfer on convenience grounds.[1]

This is one of many cases filed by Plaintiff TQP Development, LLC alleging infringement of U.S. Patent No. 5,412,730. The '730 patent relates to secure communication through the use of pseudo-random encryption keys. A sequence of pseudo-random keys is generated based on a seed value and an algorithm, and keys are selected depending upon the message data that is being sent over the transmission medium. The transmitter and receiver are thereby able to generate the same sequence of keys without the security risk of transmitting keys from the transmitter to the receiver or vice versa. This patent has been litigated numerous times

---

[1] The present motion to transfer venue is brought solely on convenience grounds under 28 U.S.C. § 1404(a). Neither TQP nor Yelp disputes that the Eastern District of Texas is a proper venue for this lawsuit. Yelp has not challenged venue by filing a timely motion to dismiss under Federal Rule of Civil Procedure 12(b)(3).

in the Eastern District of Texas, is the subject of upcoming trials[2], and this Court has previously construed the '730 patent on five occasions.[3]

## APPLICABLE LAW

Section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a) (2006). The first inquiry when analyzing a case's eligibility for § 1404(a) transfer is "whether the judicial district to which transfer is sought would have been a district in which the claim could have been filed." *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) ("*In re Volkswagen I*").

Once that threshold is met, courts analyze both public and private factors relating to the convenience of parties and witnesses as well as the interests of particular venues in hearing the case. *See Humble Oil & Ref. Co. v. Bell Marine Serv., Inc.*, 321 F.2d 53, 56 (5th Cir. 1963); *In re Nintendo Co., Ltd.*, 589 F.3d 1194, 1198 (Fed. Cir. 2009); *In re TS Tech USA Corp.*, 551 F.3d 1315, 1319 (Fed. Cir. 2009). The private factors are: 1) the relative ease of access to sources of proof; 2) the availability of compulsory process to secure the attendance of witnesses; 3) the cost of attendance for willing witnesses; and 4) all other practical problems that make trial of a case easy, expeditious, and inexpensive. *In re Volkswagen I*, 371 F.3d at 203; *In re Nintendo*, 589 F.3d at 1198; *In re TS Tech*, 551 F.3d at 1319. The public factors are: 1) the administrative

---

[2] *TQP Development, LCC v. 1-800-Flowers, Inc., et al.*, Case No. 2:11-CV-248; *TQP Development, LLC v. Alaska Air Group, Inc., et al.*, Case No. 2:11-CV-398; and *TQP Development, LCC v. Branch Bank and Trust Company*, Case No. 2:12-CV-55.

[3] *See TQP Development, LLC v. Merrill Lynch & Co., Inc., et al.*, No. 2:08-CV-471, Dkt. Nos. 383 (E.D. Tex. Mar. 28, 2011) and Dkt. No. 512 (May 19, 2012); *TQP Development, LLC v. Barclays PLC, et al.*, No. 2:09-CV-88, Dkt. 165 (E.D. Tex. Mar. 28, 2011); *TQP Development, LLC v. Ticketmaster Entertainment, Inc.*, No. 2:09-CV-279, Dkt. No. 232 (E.D. Tex. Sept. 23, 2011); and *TQP Development, LCC v. 1-800-Flowers, Inc., et al.*, Case No. 2:11-CV-248 (hearing held on Mar. 12, 2013).

difficulties flowing from court congestion; 2) the local interest in having localized interests decided at home; 3) the familiarity of the forum with the law that will govern the case; and 4) the avoidance of unnecessary problems of conflict of laws or in the application of foreign law. *In re Volkswagen I*, 371 F.3d at 203; *In re Nintendo*, 589 F.3d at 1198; *In re TS Tech*, 551 F.3d at 1319.

The plaintiff's choice of venue is not a factor in this analysis. *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 314-15 (5th Cir. 2008) ("*In re Volkswagen II*"). Rather, the plaintiff's choice of venue contributes to the defendant's burden of proving that the transferee venue is "clearly more convenient" than the transferor venue. *In re Volkswagen II*, 545 F.3d at 315; *In re Nintendo*, 589 F.3d at 1200; *In re TS Tech*, 551 F.3d at 1319. Furthermore, though the private and public factors apply to most transfer cases, "they are not necessarily exhaustive or exclusive," and no single factor is dispositive. *In re Volkswagen II*, 545 F.3d at 314-15.

Timely motions to transfer venue should be "should [be given] a top priority in the handling of [a case]," and "are to be decided based on 'the situation which existed when suit was instituted.'" *In re Horseshoe Entm't*, 337 F.3d 429, 433 (5th Cir. 2003); *In re EMC Corp.*, Dkt. No. 2013-M142, 2013 WL 324154 (Fed. Cir. Jan. 29, 2013) (quoting *Hoffman v. Blaski*, 363 U.S. 335, 443 (1960)).

## DISCUSSION

**A.     Proper Venue**

The Northern District of California and the Eastern District of Texas are proper venues.

**B.     Private Interest Factors**

### 1.     Relative Ease of Access to Sources of Proof

"In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer. Consequently, the place where the defendant's documents are kept weighs in

favor of transfer to that location." *In re Genentech, Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009) (citation omitted).

Yelp is a Delaware corporation with its principal place of business in San Francisco, California. Yelp has submitted a declaration by Andy Bakun, Director of Systems (Bakun Decl., Dkt. No. 19-1.) "[D]ocuments and other evidence in Yelp's possession relating to any use of RC4, SSL, or TLS in connection with www.yelp.com are located in the Northern District of California or are otherwise easily accessible from Yelp's San Francisco headquarters there." (Bakun Decl. at 2)

TQP is a limited liability company with a single employee located in Dallas, Texas. TQP does not identify any sources of proof located in the Eastern District of Texas. This factor weighs in favor of transferring to the Northern District of California.

### 2. Cost of Attendance for Willing Witnesses

"The convenience of the witnesses is probably the single most important factor in a transfer analysis." *In re Genentech, Inc.*, 566 F.3d 1338, 1342 (Fed. Cir. 2009). While the Court must consider the convenience of both the party and non-party witnesses, it is the convenience of non-party witnesses that is the more important factor and is accorded greater weight in a transfer of venue analysis. *Aquatic Amusement Assoc., Ltd. v. Walt Disney World Co.*, 734 F.Supp. 54, 57 (N.D.N.Y. 1990); *see also* 15 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 3851 (3d ed. 2012). "A district court should assess the relevance and materiality of the information the witness may provide." *In re Genentech, Inc.*, 566 at 1343. However, there is no requirement that the movant identify "key witnesses," or show "that the potential witness has more than relevant and material information . . . ." *Id.* at 1343-44.

Mr. Bakun states that, "[t]o the extent Yelp's www.yelp.com website has supported RC4, SSL, or TLS, Yelp's US-based engineering personnel who would have knowledge regarding that

- 4 -

technology work in the San Francisco office, which is located in the Northern District of California." (Bakun Decl. at 2.) "Yelp's headquarters for its U.S. sales, finance, and marketing operations are located in San Francisco, California, and Yelp employees with knowledge regarding these operations are based [there]." (*Id.* at 2.) The convenience of willing witnesses weighs in favor of transfer.

3. **Availability of Compulsory Process to Secure the Attendance of Witnesses**

*Inventor and Prosecuting Attorneys*

The sole applicant for the '730 patent is Michael F. Jones. Mr. Jones is a resident of Nashua, New Hampshire. Yelp argues that Mr. Jones is available "anywhere by virtue of [TQP] having retained him as a 'consultant.'" (Mot. at 7.) Charles Call, a prosecuting attorney, is located in Marco Island, Florida. Sanjay Prasad, the other prosecuting attorney is located in Mountain View, California.

*RC4 Algorithm Prior Art*

D. James Bidzos is the CEO and Chairman of the Board at VeriSign, a publicly traded company, and was previously the President and CEO of RSA Security from 1986 to 1999. (Mot. Ex. F, Dkt. No. 19-8.) According to Yelp, Mr. Bidzos is relevant to showing that the asserted patent is invalid based upon RSA's RC4 encryption algorithm. (Mot. at 8.) Mr. Bidzos was deposed in the prior *Merrill Lynch* case but did not testify at trial. (*Id.*)

TQP argues that Mr. Bidzos cannot offer relevant testimony because 1) he does not have personal knowledge of when Dr. Ron Rivest invented the RC4 encryption algorithm; 2) he does not have personal knowledge of when the algorithm was delivered to a customer; and 3) "he never saw the functional specification and development schedule." (Resp. at 8-9.) To the extent that RC4 is relevant to this case, TQP contends that Dr. Ron Rivest, who resides in

Massachusetts, is the relevant witness to be considered, and he is outside the subpoena power of the Northern District of California. (*Id.*)

*Authors and Inventors of Prior Art Considered by the PTO*

Douglas A. Maisel is the first inventor listed on an international patent application (filed on June 26, 1986) that was "central in the reexamination of the '730 patent." (Mot. at 9 & Ex. M, Dkt. No. 19-15.) According to Yelp, Mr. Maisel currently resides in Berkeley, California. (Mot. at 9.)

Allen Gersho is a research professor of computer and electrical engineering at the University of California, Santa Barbara. (Mot. at 9.) Prof. Gersho "is the author of relevant prior art cited on the face of the asserted patent's reexamination certificate." (*Id.*)

Christopher J. Bennett is the first named inventor of U.S. Patent No. 4,864,615 (filed on May 27, 1988), which was assigned to General Instrument Corp. of New York City. (Mot. Ex. Q, Dkt. No. 19-19.) The patent is cited on the face of the reexamination certificate of the asserted patent, and the patent was included in the invalidity contentions relied upon by defendants in prior litigation involving the asserted patent. (Mot. at 10.) According to a commercial database, Mr. Bennett may reside in San Diego. (Mot. Ex. R, Dkt. No. 19-20.)

Yelp argues that Mr. Maisel, Prof. Gersho, and Mr. Bennett may offer testimony relevant to the validity of the '730 patent, and that these witnesses are subject to compulsory process in the Northern District of California because California courts enjoy statewide subpoena power. (Mot. at 8-10.) TQP argues that these witnesses have little relevant testimony to offer because each of their respective prior art references have been considered by the Patent and Trademark Office during the original prosecution of the '730 patent or during reexamination. (Resp. at 9.)

In reply, Yelp belatedly speculates that Mr. Maisel, Mr. Gersho, and Mr. Bennett may offer testimony regarding prior art products made by their former employers. (Reply at 2-3.)

Although Yelp has shown that these inventors may offer testimony relevant to the issue of prior art, there is little showing that the testimony they may offer is material. The principal evidentiary value of the patents and printed publications that are the subjects of their proposed testimony lies in the content of the patents and publications themselves. With respect to Mr. Maisel and Mr. Bennett, Yelp's suggestion that they may offer testimony regarding prior art products of their respective assignees is wholly speculative.[4] There is no suggestion that any of the inventors have evidence to offer that is not reflected in the writings, such as evidence establishing a prior public use or an on-sale bar. That the Patent and Trademark Office has had the opportunity to consider each of these references, and in particular Mr. Maisel's (which was "central" to the reexamination), reduces the value of these references as a practical consequence of the presumption of validity.

*Subject Matter Experts*

Martin Hellman is a professor at Stanford University. According to Yelp, he is "known as [the] co-inventor of public-key cryptography, which is relevant to the methods TQP accuses of infringement." (Mot. at 8.)

Taher Elgamal is the co-founder and chief identity officer of IndentityMind in Palo Alto, California. Mr. Elgamal is "purportedly recognized as the 'father of SSL'" and is relevant because "Secure Sockets Layer is specifically identified in the [complaint] as a component of TQP's infringement allegation." (Mot. at 8.)

---

[4] In its sur-reply, TQP observes that there is no explanation for why the companies that allegedly made the prior art products are not listed as sources of proof. (Sur-Reply at 3.) TQP notes that Mr. Bennett's patent was last assigned to a Pennsylvania corporation, and that Mr. Maisel's patent was last assigned to a Utah corporation. (*Id.*)

Bruce Schneier is the CTO of Counterpane in Santa Clara, California. According to Yelp, he is "[r]enowned for his work and authorship in encryption technology" and "[h]is book, *Applied Cryptography*, has been relied upon by parties in other cases filed by TQP." (Mot. at 8.)

According to TQP, it appears that Yelp intends to use Prof. Hellman, Mr. Elgamal, and Mr. Schneier to provide "background knowledge regarding public-key cryptography, SSL, and encryption." (Resp. at 9-10.) TQP argues that Yelp cannot compel these witnesses to provide expert testimony, and any fact testimony they may offer will duplicate the sort of testimony that will be provided by the parties' experts witnesses. (Resp. at 10.) Yelp admits that it has not retained any of the witnesses as experts, but contends that the proposed testimony will "lay out the history of relevant technology." (Reply at 3.)

Although the parties are correct that Prof. Hellman, Mr. Elgamal, and Mr. Schneier are subject to the subpoena power of the Northern District of California, the suggestion that it would be a proper exercise of a court's subpoena power to compel non-material subject matter experts to testify regarding the "historic development of the relevant technology" cannot be seriously countenanced. Encryption, public-key cryptography, and SSL are general techniques that have been widely adapted and independently implemented by numerous programmers and engineers over the years. The fact that these individuals are knowledgeable of the application of these general principles at an expert level cannot justify requiring them to testify in every legal dispute that touches upon a particular application or implementation of those principles. For example, in a products liability case involving a claim that a car's airbag was defectively designed, clearly the car's manufacturer could be compelled to provide an engineer familiar with the airbag's design to testify. If the manufacturer's principal designer of the airbag was no longer employed by the car company, perhaps a court may issue a subpoena to compel the principal designer to

testify. However, no court would require the "father" of the modern car airbag, who works for a different car company, to testify regarding the proper design of modern airbags as a fact witness.

Yelp fails to articulate any connection between these subject matter experts and the issues in this case that renders them material witnesses. For example, the fact Mr. Schneier's book was "relied upon by parties in other TQP cases" cannot be enough. Mr. Schneier's book was also offered as evidence relevant to claim construction in an entirely unrelated case, and cited by this Court in a claim construction memorandum a few short months ago. (*See* Claim Construction Order at 17, *Achates Reference Publ'g, Inc. v. Symantec Corp., et al.*, Case No. 2:11-CV-294 (E.D. Tex. Jan. 3, 2013).)

*F5 Networks*

F5 Networks is a licensee of TQP, and was previously accused of infringing the '730 patent. Yelp argues that F5 Networks is relevant because it has "provided licensed product supplying encryption functionality accused of infringement to many operators of large websites, including a number of [other] defendants." (Mot. at 9.) Yelp has not submitted any competent evidence that it is a customer of F5 Networks, or shown that the products are related to the alleged infringement in this case. Yelp contends that "relevant witnesses regarding the license with TQP and licensed products presumably are located in F5's headquarters in Seattle, and may also be in F5's San Jose office, within the Northern District of California." (Mot. at 9-10.) In support of this contention, Yelp attaches a page from F5's website listing U.S. offices in Seattle, Washington; Spokane, Washington; New York City, San Jose, California; Boston, Massachusetts; Chicago, Illinois; and Washington, D.C. (Mot. Ex. T, Dkt. No. 19-22.)

TQP argues that no witness from F5 Networks is necessary because "TQP will not be pursuing any infringement claims at trial based on functionality provided by licensed products."

(Resp. at 10.) The Court finds that Yelp's identification of F5 Networks is somewhat speculative. First, the only basis for assuming that F5 Networks' products may be used by Yelp is attorney argument. Second, there is no explanation of why the San Jose office of F5 Networks may house the relevant information sought by Yelp, when its headquarters are in Seattle, Washington, and the San Jose office is but one of seven offices in the United States. Therefore, less weight is given to the identification of F5 Networks.

It appears to the Court that only Mr. Prasad, Mr. Bidzos, and perhaps a few other unwilling witnesses are properly subject to the subpoena power of the Northern District of California. Because no identified witnesses are subject to compulsory process in the Eastern District of Texas, this factor weighs in favor of transfer.

### 4. All Other Practical Problems that Make Trial of a Case Easy, Expeditious, and Inexpensive

Yelp makes the sweeping declaration that "[d]espite the fact that TQP has filed a number of cases in this District, *no judicial economy* would result from denying transfer of this case." (Mot. at 10.) (emphasis added) Yelp argues that none of the judges that have substantive knowledge of the earlier-filed *TQP* cases are available because they have since retired or were sitting by designation (referring to Judges Ward, Folsom and Bryson). (*Id.*) If transfer is granted, Yelp argues that the Northern District of California is equally able to apply rulings from the prior cases. (Mot. at 11.) Yelp stresses that it is better able compel prior art witnesses to testify live at trial in the Northern District of California, which is an important consideration because the Supreme Court has indicated a strong preference for live testimony. (Mot. at 13.)

TQP argues that there are significant judicial economy reasons for not transferring the case. TQP observes that all of the TQP cases (which all involve the same asserted '730 patent), are assigned to the same magistrate judge and district judge. A transferee "judge in the Northern

District of California would [] be required to repeat this Court's investment of time and energy to learn about the '730 patent and the accused technology to adjudicate case-dispositive motions and at trial." (Resp. at 6-7.) TQP also observes that the great majority of defendants have not moved to transfer these claims, which means a transfer in this case will result in at least two courts resolving the same issues. (*Id.* at 7.)

The Court finds that considerations of judicial economy strongly weigh against transfer. At the time the instant case was filed, over sixty cases involving the same asserted patent were pending in this District. Although it is true that the currently assigned judges were not involved in the prior *TQP* cases, it was clear from the outset of the litigation that the same judges would be expected to handle all of the then pending TQP cases, reducing the amount of judicial resources spent on learning the technology and the '730 patent's history prior to claim construction. These economies have already been realized, with this Court holding the first of several consolidated claim construction hearings in March 2013. Nor is it likely that a significant number of other courts will otherwise be involved in TQP litigation. Since this case has been filed, a number of new cases have been filed, and only a relatively small number of defendants have sought transfer. Given that the patent has since expired, it appears that litigation involving the '730 patent will wind down as this Court tries the previously filed TQP cases.

C.   **Public Interest Factors**

   1.   **Administrative Difficulties Flowing From Court Congestion**

The speed with which a case can come to trial and be resolved is a factor in the transfer analysis. A proposed transferee court's "less congested docket" and "[ability] to resolve this dispute more quickly" is a factor to be considered. *In re Hoffman-La Roche*, 587 F.3d 1333, 1336 (Fed. Cir. 2009). This factor is the "most speculative," and in situations where "several relevant factors weigh in favor of transfer and others are neutral, the speed of the transferee

district court should not alone outweigh all of those other factors." *In re Genentech*, 566 F.3d at 1347.

Yelp argues that the weighted filings per judge in 2011 favors the Northern District of California (631) over the Eastern District of Texas (847). (Mot. at 13.) Yelp observes that the median time to disposition for civil cases was quicker in the Northern District of California (11.8 months) than the Eastern District of Texas (16.5 months). (*Id.*) TQP argues that the time to trial is faster in the Eastern District of Texas (25.1 months) as compared to the Northern District of California (25.3 months). TQP notes that it would take time for this case to be transferred (Resp. at 13.) The Court finds that this factor weighs against transfer.

### 2. Local Interest in Having Localized Interests Decided at Home

This factor considers the interest of the locality of the chosen venue in having the case resolved there. *Volkswagen I*, 371 F.3d at 205-06. This consideration is based on the principle that "[j]ury duty is a burden that ought not to be imposed upon the people of a community [that] has no relation to the litigation."

Yelp argues that "this case centers on the Northern District of California", where Yelp is based, and where much of the accused encryption technology was developed. (Mot. at 13-14.) TQP argues that the Northern District of California has no greater interest in this case because the infringement by Yelp is nationwide. (Resp. at 12.) The Court finds that this factor is neutral.
.

### 3-4. Familiarity of the Forum With the Law that Will Govern the Case and Avoidance of Unnecessary Problems of Conflict of Laws or in the Application of Foreign Law

These factors are neutral.

## CONCLUSION

The Court finds that Movants have not established that the Northern District of California is a clearly more convenient forum than the Eastern District of Texas. Accordingly, Defendant Yelp Inc.'s Motion to Transfer Venue to the Northern District of California Pursuant to 28 U.S.C. § 1404(a) (Dkt. No. 19) is **DENIED**.

**SIGNED this 29th day of September, 2013.**

ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE